## Michael Baker, Jr., Inc. *v.* Chambers et ux., Appellants.

Argued April 8, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Lee C. McCandless*, with him *M. D. Furman*, for appellants.

*Saul J. Bernstein*, with him *Bernstein & Campbell*, for appellee.

OPINION BY HIRT, J., June 11, 1957:

The business of the plaintiff corporation is the furnishing of engineering services as consultants and

otherwise. Michael Baker, Jr., its president and majority stockholder is a registered engineer. The corporation has an architectural department which it maintains as an adjunct to its engineering business and has in its employ one Joseph F. Bontempo, duly qualified and registered for the practice of architecture in Pennsylvania, in accordance with the Act of July 12, 1919, P. L. 933, as amended, 63 PS §21 et seq. Bontempo is the "head architect" in charge of his department. Under an agreement with the corporation what he receives from the plaintiff, his employer, is measured by the architectural commissions executed by him.

Defendants who own a residence property in the Borough of Zelienople, contemplated certain alterations and repairs to their home. On May 21, 1949, they contacted the plaintiff corporation by telephone and inquired whether architectural services could be supplied. Their inquiry was referred to Joseph F. Bontempo who called upon the defendants. After consulting with them they agreed to pay plaintiff the actual cost of the architectural services to be rendered by Bontempo and his assistants in developing preliminary plans embodying the desired changes.

Studies, sketches and drawings were made by Bontempo which if developed into final plans and specifications, according to an estimate, would have cost about $45,000 to execute. When submitted to the defendants they refused to approve them. At the trial of this case their contention was that their agreement contemplated changes in the building that could be made for no more than $25,000 and that since the estimates for performance of the work exceeded that sum they were not liable in any amount. The jury however resolved that question in favor of the plaintiff, although the verdict against the defendants was for

but $604.81 of a total of $1,209.62 claimed as the cost of the preliminary studies.

The defendants' appeal from the refusal of the court to enter judgment for them n.o.v. raises the single question whether the plaintiff corporation may collect for architectural services under the circumstances of this case. The Act of June 27, 1939, P. L. 1188, 63 PS §21 et seq., does not differ in substance from the 1919 Act, supra, which it supplements by amendment. A corporation cannot qualify for registration under the Act (§16, 63 PS §31) and therefore may not hold itself out as an architect nor collect for architectural services rendered by it. *F. F. Bollinger Co. v. Widmann B. Corp.*, 339 Pa. 289, 293, 14 A. 2d 81. But in *Simons, Brittain and English Inc. v. Armstrong et al.*, 86 Pa. Superior Ct. 98, Judge TREXLER, speaking for this Court, said: "It is significant, that section 13 [of the 1919 Act] allows persons other than architects to design buildings and supervise their construction as long as they do not use the title of architect . . . I see no reason why a corporation authorized to erect buildings may not furnish me with the requisite drawings, but all such persons must appear in their true light and dare not assume the title of architect. It is evident, considering the whole of the 13th section of the Act of 1919, that the words 'practice of architecture' were not intended as prohibiting any person from doing the work usually done by an architect, but was aimed at such persons as claimed to be architects who were not or who, at least, could not or would not register and who, notwithstanding, still employed the professional title." In the *Armstrong* case the plaintiff corporation, which did not hold itself out as a registered architect was allowed to recover for preparing building plans which were filed by a duly registered architect and signed by him. The opinion in the *Bol-*

*linger* case, supra (p. 296), quoted the above excerpt from the *Armstrong* case with approval as the law even after the 1939 amendment to the Act, although recovery in that case was denied because plaintiff corporation itself contracted to perform architectural and engineering service and the plans were signed by the corporation president who was neither a registered engineer nor architect.

The lower court properly entered judgment on the verdict in the present case. Although defendants contacted the plaintiff corporation in the first instance it was Bontempo, a registered architect, who responded to the call and conferred with defendants as to the desired repairs and structural alterations to their house. Under §15 of the Act, 63 PS §30, "All plans and specifications . . . which by the terms of this act shall be prepared by a registered architect, shall be signed by a duly qualified and registered architect and stamped with his seal." The preliminary plans which were submitted to the defendants were signed by Joseph F. Bontempo, a duly qualified and registered architect. The fact that he did not attach his seal in addition to signing the studies is of no moment. The practice of architecture under §13 of the Act, 63 PS §28 includes the rendering of preliminary studies but under §15 it is only "plans and specifications" that are required to be signed by a registered architect *and* stamped with his seal.

Judgment affirmed.