## Applicability of Minimum Wage Act to Public Employes

34

KANE, Attorney General, YAKOWICZ, Solicitor General, and ROVELLI, Deputy Attorney General, October 18, 1976 — You have requested our opinion as to the applicability of the Pennsylvania Minimum Wage Act of 1968 to employes of the Commonwealth and its political subdivisions and instrumentalities in light of the recent decision of the United States Supreme Court in National League of Cities et al. v. Usery, — U.S. —, 96 S.Ct. 2465 (1976). It is our opinion, and you are hereby advised, that the Minimum Wage Act of 1968 is not applicable to employes of the Commonwealth and its political subdivisions and instrumentalities.

Your question presents a difficult problem of statutory construction requiring that we summarize, at the outset, the history of legislation and case law pertinent to the application of minimum wage and overtime standards to Pennsylvania public employes.

Pennsylvania's initial foray into the field of wage regulation, the Act of May 27, 1937, P.L. 917, 43 P.S. §331a, et seq., provided for the establishment of minimum fair wages paid by employers to women and children. The act empowered the Secretary of Labor and Industry to appoint a wage board to classify employments and recommend minimum fair wage rates for different classes of

employment. The Act of 1937 did not, however, speak to public employment.

The Minimum Wage Act of 1961, Act of September 15, 1961, P.L. 1313, 43 P.S. §333.1, et seq., supplemented the Act of 1937, defining "employe" in section 3, 43 P.S. §333.3, as follows:

"(6) 'Employe' includes any individual employed by an employer, but shall not include any individual:

" . . .

"(b) Employed by the United States or by the Commonwealth."

The Fair Labor Standards Act of 1938, Act of June 25, 1938, 52 Stat. 1060, 29 U.S.C. §201, et seq., was amended tin 1966 to redefine "employer," removing from that definition the exemption previously afforded the States and their political subdivisions with respect to employes of State hospitals, institutions, and schools.[1]

The Minimum Wage Act of 1968, Act of January 17, 1968, P.L. 11, 43 P.S. §333.101, et seq., defines "employer" and "employe" in section 3, 43 P.S. §333.103, as follows:

"(g) 'Employer' includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to an employe.

"(h) 'Employe' includes any individual employed by an employer but shall not include any individual to the extent that he is subject to the Federal Fair Labor Standards Act. . . ."

As enacted, the Minimum Wage Act of 1968 also provided in section 5, 43 P.S. §333.105, that

---

1. 80 Stat. 831, 29 U.S.C. §203(d) (1964 ed., Supp. II).

"(a) Employment in the following classifications shall be exempt from both the minimum wage and overtime provisions of this act:

". . .

"(17) In the employ of the United States or the Commonwealth of Pennsylvania or any political subdivision or instrumentality of the Commonwealth of Pennsylvania."

The Fair Labor Standards Act was again amended April 8, 1974, P.L. 93-259, 88 Stat. 62, this time to specifically include public agencies within the definition of "employer", 29 U.S.C. §203(d), and to fully remove the exemption previously afforded the States and their political subdivisions.[2]

Later in 1974, the Minimum Wage Act of 1968 was amended to delete from the Pennsylvania Act the exemption previously afforded the United States, the Commonwealth and its political subdivisions and instrumentalities in section 5(a)(17), 43 P.S. §333.105(a)(17).[3]

The United States Supreme Court, in a decision rendered June 24, 1976, held unconstitutional the 1974 amendments to the Fair Labor Standards Act insofar as those amendments extended coverage of the minimum wage and overtime provisions of the act to employes of the States and their political subdivisions: National League of Cities et al. v. Usery, — U.S. —, 96 S.Ct. 2465 (1976). The court, overruling Maryland v. Wirtz, 392 U.S. 183 (1968), also struck down the 1966 amendments to the Federal act insofar as those amendments extended coverage of the minimum wage and overtime

---

2. 88 Stat. 58, 64.

3. Act No. 303, December 10, 1974, P.L. 1403.

provisions of the act to employes of State hospitals, institutions, and schools.

Two separate but interrelated questions are raised by the issue of whether the Pennsylvania Minimum Wage Act of 1968 is now applicable to employes of the Commonwealth and its political subdivisions and instrumentalities. Clearly, in the wake of Usery, Pennsylvania public employes are no longer "subject to the Federal Fair Labor Standards Act." 43 P.S. §333.103(h). Also clear is that the Minimum Wage Act of 1968, as amended, contains neither an affirmative nor negative reference to coverage of public employes. The questions then are these:

1. Did the General Assembly intend, by its 1974 amendments to the Minimum Wage Act of 1968 deleting the public employe exemption, to thereby extend coverage of the act to employes of the Commonwealth and its political subdivisions and instrumentalities?

2. Even if the first question is answered in the negative, does the definition of "employer" in section 3(g) of the act, 43 P.S. §333.103(g), nevertheless include the Commonwealth and its political subdivisions and instrumentalities?

(1) It is our opinion that the General Assembly did not intend, by the negative act of removing the public employe exemption from the Minimum Wage Act of 1968, to thereby extend coverage of the act to employes of the Commonwealth and its political subdivisions and instrumentalities. We are rather of the view that, in removing the exemption, the General Assembly intended nothing more than to *entirely* exclude Federally covered public employes from the operation of the Pennsylvania Act.

The 1966 amendments to the Fair Labor Standards Act extended coverage of that act, for the first time, to employes of State hospitals, institutions and schools. The Minimum Wage Act of 1968, in sharp contrast to the Minimum Wage Act of 1961, specifically excluded from the definition of "employe" individuals "subject to the Federal Fair Labor Standards Act." The effect of that provisions, at the time of its enactment in 1968, was to entirely exclude employes of State hospitals, institutions and schools from operation of the 1968 Act. All other Pennsylvania public employes were exempted from the provisions of the act under section 5(a)(17), 43 P.S. §333.105(a)(17).

The 1974 amendments to the Fair Labor Standards Act extended coverage of that act to virtually all public employes. Those amendments were widely assumed to be constitutional based on the United States Supreme Court's decision in Maryland v. Wirtz, 392 U.S. 183 (1968), upholding the constitutionality of the 1966 amendments to the Federal Act. The provision of the Pennsylvania act excluding individuals "subject to the Federal Fair Labor Standards Act" from its operation now functioned to exclude virtually all employes of the Commonwealth and its political subdivisions and instrumentalities. As such, the specific exemption from application of the Pennsylvania act for those same employes became unnecessary, and by its 1974 amendments, the General Assembly removed the exemption.

The 1974 amendments to the Fair Labor Standards Act were enacted in April of 1974. The 1974 amendments to the Pennsylvania act were first referred to committee in the Senate in June of

1974 and were signed into law in December of 1974. The legislative history of the Pennsylvania amendments affords no insight into the legislature's purpose in removing the public employe exemption. It is however significant that, aware of the 1974 amendments to the Federal Act, the General Assembly, in amending the Pennsylvania act, still left undisturbed the provision excluding from the definition of "employe" individuals "subject to the Federal Fair Labor Standards Act." To argue that the General Assembly intended, in that context, to extend coverage of the Pennsylvania act to Pennsylvania public employes is to impute to the General Assembly an intent that is unreasonable and absurd. With virtually all employes of the Commonwealth and its political subdivisions and instrumentalities now "subject to the Federal Fair Labor Standards Act," and, therefore, excluded from operation of the Pennsylvania act, to whom would the General Assembly be intending to extend coverage? Are we to believe that the General Assembly envisioned the judicially wrought demise of the 1974 amendments to the Federal Act and legislated in reliance upon that vision? The answer is clearly no, for it is presumed ". . . [t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." Statutory Construction Act of 1972, 1 Pa. C.S.A. §1922(1).

A comparison of the General Assembly's treatment of the definition of "employe" in the Minimum Wage Act of 1968 with its treatment of the definition of "employe" in the Pennsylvania Equal Pay Law of December 17, 1959, P.L. 1913, as amended, 43 P.S. §336.1, et seq., sheds

additional light on this discussion. As originally enacted in 1959, the Equal Pay Act defined "employe" in section 2(a), 43 P.S. §336.2(a), as ". . . any person employed for hire in any lawful business, industry, trade or profession, or in any other lawful enterprise."

The Equal Pay Act was amended in 1968[4], adding to the definition of "employe" in section 2(a), 43 P.S. §336.2(a), the following language:

". . . including individuals employed by the Commonwealth or any of its political subdivisions, including public bodies: Provided, however, That the term 'employe' as used in this act shall not apply to any person or persons who is or are subject to Section 6 of the Federal Fair Labor Standards Act. . . ."

Thus, with affirmative language, the General Assembly made clear in 1968 its intent to extend coverage of the Equal Pay Act to all Pennsylvania public employes not "subject to Section 6 of the Federal Fair Labor Standards Act." The absence of similar affirmative language in the 1974 amendments to the Minimum Wage Act of 1968, when considered in light of the similar exclusion of Federally covered employes from the definition of "employe" in both acts, lends further support to the conclusion that the General Assembly did not intend, by removing the public employe exemption from the Minimum Wage Act of 1968, to thereby extend coverage of the act to Pennsylvania public employes.

(2) Although the General Assembly intended nothing more by its 1974 amendments than to entirely exclude Federally covered public

4. Act No. 262, July 31, 1968, P.L. 869.

employes from the operation of the Pennsylvania act, if the definition of "employer" in section 3(g) of the act, 43 P.S. §333.103(g), is construed to include the Commonwealth and its political subdivisions and instrumentalities, then the combined effect of the 1974 amendments to the Pennsylvania act and the Usery decision is to "leave" the Minimum Wage Act of 1968 in a posture of covering Pennsylvania public employes.

It may be argued that unless the definition of "employer" is read to include the Commonwealth and its political subdivisions and instrumentalities, the public employe exemption deleted from the act in 1974 was surplusage. Section 1921(a) of the Statutory Construction Act, 1 Pa. C.S.A. §1921(a), provides that ". . . [e]very statute shall be construed, if possible, to give effect to all its provisions." Applying that rule, the argument would lead us to conclude that the definition of "employer" in section 3(g) of the act, 43 P.S. §333.103(g), always included the Commonwealth and its political subdivisions and instrumentalities.

The argument is unpersuasive for two reasons: (1) It cannot be reconciled with another applicable and well-established rule of statutory construction; and (2) it is "inconsistent with the manifest intent of the General Assembly." Statutory Construction Act of 1972, Act of November 25, 1970, P.L. 707 (No. 230), 1 Pa. C.S.A. §1901. §1901.

The Pennsylvania Supreme Court has repeatedly declared that ". . . It is an established principle of statutory construction that an act does not deprive the Commonwealth of any prerogative, right or property . . . unless the

Commonwealth is specifically named therein or unless an intention to include the Commonwealth is necessarily implied [citations omitted]." Keifer Appeal, 430 Pa. 491, 495, 243 A.2d 336 (1968).

The Commonwealth is neither specifically named in the Minimum Wage Act of 1968, nor can the intention to include the Commonwealth be necessarily implied from the act.

An exception to the general rule has been recognized where the statute is an expression of "public policy." Pittsburgh Public Parking Authority Petition, 366 Pa. 10, 76 A.2d 620 (1950). That exception has, however, been strictly limited. As the court stated in Keifer Appeal, 430 Pa. at 496:

"[E]very statute is an expression of public policy to some extent. If the exception is not to swallow the rule, 'public policy' must be limited to the clearest cases. . . ."

The "test" of whether the "public policy" exception applies may be stated as follows: Does the statute embody a rule so clearly in the public interest that a court is justified in calling it an expression of "public policy" with the effect that the Commonwealth is bound by its operation without being named therein or included by necessary implication? Keifer Appeal, 430 Pa. at 496. The Pennsylvania Supreme Court has stated that:

"The right of a court to declare what is or is not in accord with public policy does not extend to specific economic or social problems which are controversial in nature and capable of solution only as the result of a study of various factors and conditions." Mamlin v. Genoe, 340 Pa. 320, 325, 17 A.2d 407 (1941).

While it is clear that the Minimum Wage Act of 1968 is an expression of "public policy" in the broad and general sense, it is equally clear that the specific application of that act to particular classes of employment involves controversial social and econimic questions capable of solution only by consideration of various factors and conditions. See 43 P.S. §333.101. What is or is not in the public interest in terms of public employment relations and standards has long been a subject of vigorous economic, political and legal debate. In this setting, the Minimum Wage ACt of 1968 is not an expression of "public policy" in the narrow and technical sense that would bind the Commonwealth to its operation: Keifer Appeal, 430 Pa. at 496. The exception is, therefore, inapplicable and the general rule prevails.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly . . ." Statutory Construction Act of 1972, 1 Pa. C.S.A. §1921(a). At no time in the history of minimum wage legislation in Pennsylvania has the General Assembly ever displayed the slightest affirmative intent to extend coverage of such legislation to public employes. Moreover, as we have already concluded, the General Assembly did not intend, by the negative act of removing the "public employe" exemption from the 1968 Act, to thereby extend coverage of the act to Pennsylvania public employes. Section 1901 of the Statutory Construction Act, 1 Pa. C.S.A. §1901, provides that:

"In the construction of the statutes of this Commonwealth, the rules set forth in this chapter shall be observed, unless the application of such

rules would result in a construction inconsistent with the manifest intent of the General Assembly."

It would indeed violate all discernible manifestations of legislative intent to apply section 1921(a) of the Statutory Construction Act, 1 Pa. C.S.A. §1921(a), to construe the definition of "employer" in section 3(g) of the Minimum Wage Act of 1968, 43 P.S. §333.103(g), to include the Commonwealth and its political subdivisions and instrumentalities.

For all the foregoing reasons, we conclude that the Pennsylvania Minimum Wage Act of 1968 is not applicable to employes of the Commonwealth and its political subdivisions and instrumentalities.